**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

ABRAHAM GERMANY BERHE,

Petitioner,

v.

JOHN MATTOS, *et al.*,

Respondents.

Case No. 2:25-cv-01782-RFB-DJA

**ORDER GRANTING
WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Abraham G. Berhe's First Amended Petition for Writ of Habeas Corpus (ECF No. 16). Through it, Mr. Berhe argues, *inter alia*, that his ongoing detention is unlawful because his removal from the United States is not reasonably foreseeable. For the following reasons, the Court agrees, awards Mr. Berhe a writ of habeas corpus, and orders his immediate release.

## I.     PROCEDURAL HISTORY

On September 22, 2025, Petitioner Abraham Berhe filed a *pro se* petition for writ of habeas corpus. See ECF No. 1. This Court deferred initial screening and instructed the Clerk of Court to send Mr. Berhe a blank application to proceed *in forma pauperis* ("IFP"), which he completed and filed on October 20, 2025. See ECF Nos. 3-4. This Court then granted Petitioner's IFP application and appointed the Federal Public Defender ("FPD") to represent Mr. Berhe, providing the FPD until November 12, 2025, to file an Amended Petition. See ECF Nos. 6, 10. The parties filed a stipulation on November 6, 2025, seeking to extend Petitioner's deadline to file an Amended Petition to November 26, 2025, which the Court granted. See ECF Nos. 14-15.

On November 25, 2025, Mr. Berhe filed a counseled Amended Petition, associated

exhibits, and a concurrent Motion for Temporary Restraining Order ("TRO"). See ECF Nos. 16-18. The Court screened Mr. Berhe's amended petition and determined that he had established a *prima facie* case for relief; accordingly, the Court ordered Respondents to show cause for Petitioner's detention within fourteen days—by December 10, 2025. See ECF No. 19; see also 28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall fortwith award the writ or issue an order directing the respondent[s] to show cause why [it] should not be granted."). Finding Petitioner's Motion for TRO warranted expedited consideration, the Court ordered Respondents file a response to the Motion by December 3, 2025, and gave the Petitioner until December 10, 2025, to file a reply. See id.

The December 3, 2025, deadline passed without a response by Respondents, and Petitioner filed a notice of non-opposition, arguing that this failure to respond constituted consent to granting the motion. See ECF No. 20. Respondents then filed a motion to extend their deadlines to respond to both the TRO and Amended Petition on December 8, 2025, seeking a deadline of December 12, 2025, for both, which Petitioner opposed. See ECF Nos. 21-22. This Court granted the extension, *nunc pro tunc*. See ECF No. 29. On December 12, 2025, Respondents filed both their return to the Amended Petition and response to the Motion. See ECF Nos. 23-24. Petitioner, by and through counsel, filed his traverse to the Amended Petition on December 17, 2025, then filed his reply to the Motion for TRO on December 19, 2025. See ECF Nos. 27-28.

The Court's Order on Mr. Berhe's Amended Petition follows below.

## II.   JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St.

Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curiam) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention . . . ."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

### III.    FACTUAL BACKGROUND

The Court makes the following findings of fact as to Petitioner.[1] Mr. Berhe was born in pre-independence Eritrea, and he came to the United States in 1987 as a child refugee, fleeing the Eritrean War of Independence between the annexed Eritrea Province and Ethiopian Empire. See ECF No. 16 at 4. Mr. Berhe lived with extended family once he arrived in the U.S., as his parents, siblings, and many other loved ones died during the war. See id. Eritrea became an independent sovereign in 1991 after decades of conflict with Ethiopia; that independence was ratified in 1993. See id. The independent Eritrea of today is distinct from the Eritrea that existed during Ethiopian annexation when Mr. Berhe lived there prior to 1987. See id. at 4-5.

---

[1] Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 195), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See id. To reach the truth of these matters, district courts "may fashion appropriate modes of procedure" to "summarily hear and determine the facts[ ] and dispose of the matter as law and justice require." Harris, 394 U.S. at 299 (quoting 28 U.S.C. § 2243) (quotation marks omitted). In fact, it is "the inescapable obligation of the courts" to vindicate their "habeas corpus jurisdiction" by fashioning "methods for securing facts where necessary." Id.

Fifteen years after he came to this country, Mr. Berhe was ordered removed by an immigration judge in Eloy, Arizona on November 5, 2002. See ECF No. 23-1 at 4. The order specified Eritrea as the country of removal, with no alternative listed, and indicated that any appeals to the order had been waived. See id. Mr. Berhe was then released on an Order of Supervision ("OSUP") from ICE. See ECF No. 16 at 5. According to Petitioner, this release was because Mr. Berhe could not be removed to his country of origin as the Eritrean government would not issue Mr. Berhe travel documents; Respondents do not contest this. See id.; see generally ECF No. 23. There is no evidence that Mr. Berhe had any further interaction with immigration authorities until February 11, 2025, when he was re-detained by ICE.[2] See ECF No. 16 at 2. Petitioner has been detained at Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada, for the almost-year since. See id. at 3.

Federal Respondents "submit that travel documents for Eritrea have been requested but have not yet been received," and that they continue to "request updates but have not gotten any updates from Eritrea recently."[3] ECF No. 23 at 3. During his detention, Mr. Berhe has been in contact with the Eritrean consulate himself and underwent an extensive interview in June 2025. See ECF No. 16 at 5. In said interview, the consulate attempted to find records of family members or other links that would tie Mr. Berhe to the Eritrean nation of today. See id. However, it was determined that there is no record of Mr. Berhe in Eritrea, no ties or records that would allow Mr. Berhe removal to and acceptance in Eritrea, or even the issuance of travel documents. See id. Mr. Berhe has not received any documents from Respondents identifying a third country of removal nor any other plan for removal. See id. In addition, Respondents have made no claim that Mr. Berhe is "specially dangerous" or of any other special circumstance that would allow for extended detention under 8 C.F.R. § 241.14. See id.

IV.    LEGAL STANDARD

---

[2] In his original *pro se* Petition, Petitioner asserts that this re-detention was because of a violation of the conditions of supervision, a position adopted by Respondents in their return, but this Court has received no further details about the supposed violation. See ECF Nos. 1-1 at 7, 23 at 1.

[3] Respondents provide no evidence of these efforts nor any response by Eritrea at any time, and Respondents do not define what they mean by "recently."

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four statutes empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). A non-citizen's place within this web of statutes is significant as it "can affect whether [their] detention is mandatory or discretionary, as well as the kind of review process available to [them] if [they] wish[ ] to" challenge their detention. See id. (citation omitted). Respondents invoke § 1231(a)(6) to justify Petitioner's detention. See ECF No. 23 at 3. Therefore, this is the only detention provision of the INA relevant to this case.

### i. *Section 1231(a)*

Section 1231 governs the detention of non-citizens who are subject to final orders of removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order). When a non-citizen "is ordered removed, [the Department of Homeland Security ("DHS")] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this period, "detention is mandatory." Id. (citing § 1231(a)(2)). A non-citizen's removal period begins on the latest of three dates: (i) when their removal order becomes administratively final; (ii) when a court that stayed deportation enters a final order regarding their deportation; or (iii) when they are released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8 U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Pursuant to § 1231(a)(6), DHS may continue to detain a non-citizen who is: (i) inadmissible; (ii) removable under certain provisions of § 1227(a); (iii) a risk to the community; or (iv) unlikely to

comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)) "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

Once a non-citizen enters the post-removal period, they are subject to detention *insofar* as their deportation is reasonably foreseeable. As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). But a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat." Zadvydas, 533 U.S. at 699 (citation omitted). Accordingly, the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Supreme Court also held that six months is a presumptively reasonable period of time to deport a non-citizen. See Zadvydas, 533 U.S. at 700–701. In practice, this means that DHS can presumptively detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). "After that point, if the [non-citizen] 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the [g]overnment must either rebut that showing or release the [non-citizen]." Guzman Chavez, 549 U.S. at 529 (citation omitted) (quoting Zadvydas, 533 U.S. at 701).

In short, post-removal-period detention violates the INA *and the Constitution* when a non-citizen's removal is not reasonably foreseeable. Cf. Arteaga-Martinez, 596 U.S. at 579 (citation omitted) (reaffirming that Zadvydas construed 8 U.S.C. § 1231 "in light of the Constitution's demands.").

### V.    DISCUSSION

Petitioner raises five grounds for relief[4]: (1) the continued, indefinite detention of Mr.

_____

[4] The Court notes that Respondents have provided only a single page of legal reasoning that attempts to rebut only Petitioner's first due process claim. See generally ECF No. 23. In doing so, they have failed to meaningfully

Berhe violates his Fifth Amendment right to due process as his removal is not reasonably foreseeable, warranting his immediate release; (2) Mr. Berhe's continued detention violates § 1231(a)(6) of the INA, as it is both unreasonable and not reasonably foreseeable, warranting his immediate release; (3) ICE's failure to comply with its own regulations concerning the re-detention of Mr. Berhe while he was out on an order of supervision violates his due process rights and the Administrative Procedures Act ("APA"), entitling him to release; (4) ICE's policy to remove noncitizens to a third country without notice of opportunity to seek fear-based protection violates Mr. Berhe's due process rights and the APA, entitling Mr. Berhe to meaningful notice and the opportunity to present a fear-based claim to an immigration judge; and (5) Mr. Berhe's continued detention by ICE pursuant to recent ICE policy concerning third country removal violates the Fifth Amendment due process clause, also warranting Petitioner's release. See ECF No. 16 at 14-20.

The Court finds that Petitioner's detention is governed by 8 U.S.C. § 1231(a) because he is subject to a final order of removal, a finding undisputed by either party. Further, Mr. Berhe is not subject to mandatory detention, as his removal period ended nearly twenty-three years ago. Based on this timeline, his ongoing detention is no longer presumptively reasonable; rather, it is unlawful because his removal from the United States is not reasonably foreseeable. For these reasons, as explained below, the Court finds Mr. Berhe's continued detention violates the U.S. Constitution and the INA and orders his release.[5]

### i. *Mandatory Detention Under § 1231(a)*

Because the parties do not dispute that § 1231(a) governs Mr. Berhe's detention, the Court now considers whether he is subject to mandatory detention pursuant to this provision. He is not. An immigration judge ordered Petitioner removed on November 5, 2002. See ECF No. 23-1 at 4. Because Petitioner and DHS waived their appellate rights, Petitioner's removal order became administratively final that same day. See 8 U.S.C. § 1101(a)(47)(B)(ii); see also 8 C.F.R. § 1241.1(b) ("An order of removal . . . shall become final . . . [u]pon waiver of appeal by the

---

address any other claim.

[5] Because the Court grants the requested relief of immediate release as it pertains to Mr. Berhe's INA and Zadvydas claims, the Court need not reach the merits of Mr. Berhe's APA challenges. The Court also declines to address Mr. Berhe's third country removal claims at this time as neither party has asserted that Respondents have made any plans to remove Mr. Berhe to a third country, furthering Mr. Berhe's claim about the foreseeability of removal, or rather, lack thereof.

respondent."); see also Padilla-Ramirez v. Bible, 882 F.3d 826, 831 (9th Cir. 2017). Thus, Petitioner's removal period began running on November 5, 2002, and it lapsed on February 3, 2003—i.e., 90 days later. See 8 U.SC. § 1231(a)(1)(A).[6] As soon as it did, Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement. See 8 U.S.C. § 1231(a)(3); Arteaga-Martinez, 596 U.S. at 578–79 (citations omitted). In addition, Respondents have made no argument that Mr. Berhe is specially dangerous or that any special circumstances allowing for extended detention apply. See 8 C.F.R. § 241.14

### ii.  *Presumption of Reasonability*

Since Petitioner is within the post-removal period, the Court must decide whether his ongoing detention is presumptively reasonable. The Court finds that it is not. To recap, it is presumptively reasonable for DHS to detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Petitioner's final order of removal is over twenty-three years old, and his statutory removal period ended approximately 264 months ago.[7] Therefore, his ongoing detention exceeds the bounds of that which is presumptively permissible under the INA and the Constitution. See Zadvydas, 533 U.S. at 701.

### iii.  *Foreseeability of Removal*

Turning to the specific facts of this case, the Court finds that Petitioner has shown that his

---

[6] The Court relies on the date of Petitioner's removal order because the remaining provisions of 8 U.S.C. § 1231(a)(1)(B) appear to be inapplicable in this case.

[7] Petitioner states that "this Court does not need to decide the question of when that period started, or how to calculate the six months in this case because Berhe's present detention has now spanned more than ten months." See ECF No. 27 at 3. While it is true that the duration of Mr. Berhe's current detention alone exceeds the window of presumptive reasonability under Zadvydas, the Court clarifies that a non-citizen's presumptively reasonable period of detention is typically tied to their removal order, and it lapses six months after this order becomes final. See Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Mr. Berhe's removal order became final on November 5, 2002—a fact that is undisputed. See ECF No. 23-1. Therefore, it has not been presumptively reasonable for Respondents to detain him since 2003. Non-citizens are not subject to a new presumptively reasonable period of detention *every time* they are re-detained. Put simply, the INA does not authorize indefinite detention. That principle is the central thrust of the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 689 (2001) ("In our view, [§ 1231(a)(6)], read in light of the Constitution's demands, limits [a non-citizen's] post-removal-period detention to a period reasonably necessary to bring about [their] removal from the United States. It does not permit indefinite detention."). If a non-citizen is subject to a new presumptively reasonable period of detention every time they are detained, "the government could simply circumvent the INA by releasing and re-detaining [them] such that they never reach six months of continuous detention. That would amount to indefinite detention in all but name, which is statutorily and constitutionally impermissible." Shadalo v. Mattos, No. 2:25-cv-02076-RFB-BNW, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025).

removal is not reasonably foreseeable. Petitioner was ordered removed on November 5, 2002. That was *over twenty-three years ago*. Furthermore, Petitioner's current period of detention began on February 11, 2025, almost a full year ago. Despite an abundance of time, ICE has been unable to effectuate Petitioner's removal from the United States. This is unsurprising. ICE cannot deport Petitioner to his birth country because the Eritrea of today is distinct from the country Petitioner fled as a child prior to Eritrean independence. Moreover, the Eritrean government has no record of Mr. Berhe nor record of other ties between the country and Mr. Berhe that would allow for the issuance of travel documents, removal, or acceptance. And Respondents have not indicated any plan to identify any viable alternatives. On this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (finding that the government's inability to repatriate a non-citizen, or identify any viable alternatives, formed a "powerful indication of the improbability of his foreseeable removal").

Finally, Respondents have failed to rebut this showing. Respondents argue that Petitioner's removal is reasonably foreseeable because Respondents have requested travel documents for Eritrea, but state that those documents "have not yet been received," and "Federal Respondents continue to request updates but have not gotten any updates from Eritrea recently." ECF No. 23 at 3. However, they have not offered any indication that "updates" are likely. To the contrary, Respondents have not disputed that Mr. Berhe was unable to get travel documents in 2002, which led to his release on supervision, and they have not disputed Mr. Berhe's account of communications with the Eritrean consulate just last year, in June 2025, which confirm that the country lacks a record of Mr. Berhe that would enable the issuance of travel documents. See ECF No. 27 at 3.

At best, Respondents have established a mere attempt at contacting a country that has no record of ties to Petitioner. This is woefully insufficient to establish a "significant likelihood of removal in the reasonably foreseeable future," Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) (citations omitted). Instead, the Court finds that Petitioner has been condemned to a

"removable-but-unremovable limbo," whereby he is legally—but not practically—removable from the United States. See Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citation omitted). Accordingly, his ongoing detention is statutorily and constitutionally unlawful, and he must "be released into American society." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347–48 (2005).

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** Mr. Berhe's First Amended Petition for Writ of Habeas Corpus (ECF No. 16) is **GRANTED**. Defendants must **IMMEDIATELY RELEASE** Petitioner by no later than **7:00 P.M.** on **January 28, 2026**, subject to the conditions of his prior order of supervision. See 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **January 29, 2026,** confirming Respondents' compliance with this Order.

**IT IS FURTHER ORDERED** Petitioner's Motion for Temporary Restraining Order (ECF No. 18) is **DENIED** as moot.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**DATED:** January 28, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**